## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| CHIH SHEN CHEN, *et al.*, | § | |
| Plaintiffs and | § | |
| Counter-Defendants, | § | |
| | § | |
| v. | § | CASE NO. 4:12-cv-0618 |
| | § | |
| INTEPLAST GROUP, LTD., | § | |
| Defendant and | § | |
| Counter-Plaintiff. | § | |

## <u>MEMORANDUM AND ORDER</u>

This case is before the Court on Defendant and Counter-Plaintiff Inteplast

Group, Ltd.'s ("Inteplast") Motion for Partial Summary Judgment [Doc. # 52]

("Inteplast's Motion for Summary Judgment") and on Plaintiff and Counter-

Defendant Chih Shen Chen's ("Gary Chen") Motion for Partial Summary Judgment

[Doc. # 55] ("Gary Chen's Motion for Summary Judgment").[1] Also before the Court

are Defendant Inteplast's Motion for Judicial Notice of Foreign Law [Doc. # 33] and

Plaintiffs Gary Chen and Alpha Plastics (Vietnam) Co Ltd ("APV", and together

with Gary Chen, "Plaintiffs")'s Motion for Judicial Notice of Foreign Law [Doc.

---

[1]     For ease of reference, Inteplast will be referred to as "Defendant" and Gary Chen and
Alpha Plastics (Vietnam) Co., Ltd. ("APV") by their names individually or
"Plaintiffs" collectively.

# 56].   These motions are ripe for consideration.[2]   Having reviewed the parties' briefing, the applicable legal authorities, and all matters of record, the Court **grants in part and denies in part** Inteplast's Motion for Summary Judgment, **grants in part and denies in part** Gary Chen's Motion for Summary Judgment, and **denies** Inteplast's Motion for Judicial Notice of Foreign Law and Plaintiffs' Motion for Judicial Notice of Foreign Law.

## I.    BACKGROUND

The background facts of this case are hotly contested.   Because both parties have moved for summary judgment, the Court presents each party's description of the facts, to the extent those descriptions are supported by the evidence of record.[3]

### A.    The Parties' Agreements

Inteplast is a North American manufacturer and purchaser of plastic bags.   In addition to purchasing plastic bags directly from foreign companies, Inteplast also

---

[2]    Gary Chen filed a Response to Inteplast's Motion for Summary Judgment [Doc. # 62], to which Inteplast filed a Reply [Doc. # 73] and Sur-reply [Doc. # 80] and Gary Chen filed a Sur-reply [Doc. # 78] and Supplemental Brief [Doc. # 79].   Inteplast filed a Response to Gary Chen's Motion for Summary Judgment [Doc. # 76], to which Gary Chen filed a Reply [Doc. # 77] and Supplemental Brief [Doc. # 79].   No response was filed to either Motion for Judicial Notice of Foreign Law.

[3]    The Court does not rely on assertions in the parties' briefs that lack supporting admissible evidence.

outsources the manufacturing of bags to foreign companies.[4]   After creating or purchasing the bags, Inteplast sells them to retailers, such as Macy's and Albertsons.[5]

Like Inteplast, Plaintiff Gary Chen is also in the business of manufacturing plastic bags.  Gary Chen's companies include or have included Alpha Plastics, Inc. and Spring Packaging, both Texas companies involved in the plastic bag industry.[6] Gary Chen also previously held an ownership interest in a Chinese company named Hong Jie that manufactured and sold plastic bags.[7]

In 2004, the United States Department of Commerce imposed anti-dumping tariffs on plastic bags imported from China, including those from Hong Jie.[8]   As a result, Gary Chen, along with two other investors, Mi-Yi Chen and Ming-Chih Wang,

---

[4]      Deposition of Chin Joe Chen [Exh. 1 to Doc. # 62] ("Joe Chen Dep."), at 62:8-23.

[5]      *Id.*, at 61:23-62:7.

[6]      Deposition of Chih Shen Chen [Exh. 1 to Doc. # 52] ("Gary Chen Dep."), at 9:4-11:19.

[7]      Declaration of Chih Shen Chen [Ex. 4 to Doc. # 62] ("Gary Chen Decl."), ¶ 1.

[8]      *Id.*; Gary Chen Dep., at 20:14-23.  An anti-dumping tariff is "[a] tarriff equaling the difference between the price at which the product is sold in the exporting country and the price at which the importer will sell the product in the importing country" which are "designed to prevent foreign businesses from artificially lowering their prices and gaining unfair advantages outside their home market." BLACK'S LAW DICTIONARY 1593 (9th ed. 2009).

created a Vietnamese company, Alpha Plastics (Vietnam) Co., Ltd. ("APV").[9]  At the

time, Vietnam was not subject to anti-dumping tariffs.[10]  Gary Chen claims that he

created APV at the suggestion of Inteplast, who told him either to relocate to Vietnam

or lose Inteplast's business.[11]

APV was organized as a limited liability company ("LLC") under the laws of

Vietnam.[12]  Of APV's original three shareholders, only Minh-Chih Wang was initially

registered as a shareholder with the Vietnamese government.[13]  In 2008, APV was re-

registered as a two-member LLC, with Gary Chen as the Chairman of the Board of

Principal Members and Mi-Yi Chen as General Director and "legal representative."[14]

From  November  28,  2008  to  July  5,  2013,  Mi-Yi  Chen  was  the  sole  legal

---

[9]     Gary Chen Decl., ¶¶ 1-2.

[10]    *Id.*, ¶ 1.

[11]    *Id.*  APV's only customers were Inteplast and Spring Packaging.  Gary Chen Dep., at
        40:18-41:4.

[12]    Declaration of Le Thi Hoa, dated February 18, 2013 [Exh. 6 to Doc. # 52] ("First Hoa
        Decl."), ¶ 7.

[13]    Letter to Alpha Plastic (Vietnam) Co., Ltd. from People's Committee of Tay Ninh
        Province, Economic Zone Authority [Exh. 9 to Doc. # 52], ¶ 4.

[14]    *Id.*; First Hoa Decl., ¶ 7.  Under Vietnamese law, the "legal representative" of a
        company "has sole authority to direct and undertake certain acts on behalf of the
        company," including entering contracts on behalf of the company.  *See* Third
        Declaration of Le Thi Hoa, dated May 31, 2013 [Exh. 8 to Doc. # 52] ("Third Hoa
        Decl."), ¶ 5; First Hoa Decl., ¶ 9.

representative of APV.[15]   On July 5, 2013, Gary Chen acquired all of Mi-Yi Chen's shares and interest in APV and became APV's legal representative.[16]

In 2005, Inteplast paid $180,000 in order to acquire a 20% shareholder interest in APV.[17]   A year later, Inteplast invested another $180,000 to acquire another 20% interest in APV, for a total of 40%.[18]   Inteplast asserts that Gary Chen stated and orally agreed to register Inteplast as a shareholder with the proper Vietnamese authorities.[19]   Inteplast never actually acquired these shares under Vietnamese law.[20]

In 2006, APV sought to expand its capacity, at a cost of $1.5 million.[21]   With the expansion, APV anticipated that its Vietnam plant would be able to produce 1,000

---

[15]   Declaration of Mi-Yi Chen [Exh. 10 to Doc. # 76] ("Mi-Yi Chen Decl."), at 1; Third Hoa Decl., ¶ 7.

[16]   Gary Chen Decl., ¶ 6.  Gary Chen attaches to his declaration (1) purported Minutes of Meeting of a meeting of APV's Members Council held on July 5, 2013 (Exhibit C); and (2) a purported power of attorney from Mi-Yi Chen allowing Gary Chen to become APV's legal representative (Exhibit D).  No English translations are provided for either of these documents, and thus the Court does not rely on them as evidence for summary judgment purposes.

[17]   Gary Chen Dep., at 44:17-21; Declaration of Ben Tseng [Exh. 14 to Doc. # 52] ("Ben Tseng Decl."), ¶ 3.

[18]   Gary Chen Dep., at 44:22-45:9; Ben Tseng Decl., ¶ 3.

[19]   Second Declaration of Ben Tseng [Exh. 1 to Doc. # 76] ("Second Ben Tseng Decl."), ¶ 2.

[20]   Gary Chen Dep., at 45:10-46:22.

[21]   Gary Chen Decl., ¶ 3.

tons of plastic bags per month, and expected to export 900 tons of T-shirt bags per month.[22]  On May 22, 2006, APV and Integrated Bagging Systems, Inc. ("IBS"), a division of Inteplast,[23] appear to have entered into an agreement (the "May 22, 2006 Agreement"), memorialized in writing, in which APV agreed to increase its production of T-shirt bags for export to 900 tons per month, and to produce and supply to IBS 700-750 tons per month of T-shirt, merchandise, and wave-top bags.[24] IBS agreed to purchase 600-650 tons per month of bags from APV.[25]

Inteplast made two additional capital contributions to APV.  It contributed $200,000 and $100,000 on January 12, 2007, and April 10, 2007, respectively, to

---

[22]    Supplemental Statement for 5-18-06 Vietnam Plant Expansion Plan [Exh. 5 to Doc. # 62] ("May 22, 2006 Agreement"), ¶ A.

[23]    Deposition of Ben Tseng [Exh. 3 to Doc. # 78] ("Ben Tseng Dep."), at 90:12-15. Inteplast suggests that IBS is incorporated but provides no documentary support for this assertion.  Inteplast cites only to the May 22, 2006 Agreement, which merely uses "IBS" without an indication that IBS is a incorporation.  *See* Inteplast's Reply [Doc. # 73], at 11-12; May 22, 2006 Agreement, ¶¶ B-D.

[24]    May 22, 2006 Agreement, ¶¶ A-B.

[25]    May 22, 2006 Agreement, ¶¶ C-D.  This agreement, termed a "Supplemental Statement for May 18, 2006 Vietnam Plant Expansion Plan," was translated from an original document drafted in Chinese.  Gary Chen attached to his complaint a substantially similar translation of the document.  *See* Addendum, May 22, 2006, Expansion of Vietnam Factory [Doc. # 19-1].  That translation states that Inteplast's agreement to order a minimum number of tons per month occurs "[i]f the above conditions are met" (*i.e.*, if APV produces the requisite number of bags under the supplemental statement).  *Id.*, ¶ C.

fund the proposed plant expansion.[26]  Inteplast asserts, in this connection, that Gary

Chen stated and orally agreed to contribute an equal amount of capital to APV on a

pro rata basis.[27]  Gary Chen claims that he also contributed $300,000 in this time

frame towards the plant expansion by transferring money to an account of Alpha

Century Global in Taiwan.[28]  However, according to Mi-Yi Chen, a former

shareholder of APV, neither he nor Gary Chen ever contributed additional capital to

APV after Inteplast became a shareholder.[29]

Inteplast also made several loans to APV.  Inteplast loaned APV $756,000 in

2007 in order to cover a shortfall in the expansion plan resulting from APV's inability

to obtain a bank loan.[30]  In 2008, Inteplast loaned APV another $500,000, paid in

several installments.[31]  Here too, Inteplast asserts that Gary Chen orally agreed that

if Inteplast would loan this money to APV, he would cause APV to increase its

---

[26]    Gary Chen Dep., at 65:7-66:23; Ben Tseng Decl., ¶ 3.

[27]    Second Ben Tseng Decl., ¶ 3.

[28]    Gary Chen Decl., ¶ 3; Gary Chen Dep., at 67:3-68:17.  The relationship between
Alpha Century Global and the parties in this case is not established in the record.

[29]    Mi-Yi Chen Decl., at 1.

[30]    Ben Tseng Decl., ¶ 4; Mi-Yi Chen Decl., at 1.  APV, through Gary Chen, provided
a "Chattel Pledge Agreement" ("CPA") to Inteplast in conjunction with this loan.  The
CPA is described in the next section.  *See infra* Part I.B.

[31]    Ben Tseng Decl., ¶ 4

production to 900 tons per month.[32]

As part of Inteplast's 2008 loans, Gary Chen entered into a Personal Guarantee Agreement ("PGA") in favor of Inteplast.[33]  The PGA provides that Gary Chen (the "Guarantor") "unconditionally guarantees prompt payment when due of any existing or future Indebtedness" of APV (the "Debtor").[34]  The version of the PGA signed by Gary Chen on July 17, 2008 contains a provision that "[t]his Guarantee Agreement will become null and void once INTEPLAST acquires security interest on Debtor's property" (the "Nullity Provision").[35]  The version of the PGA sent by Ben Tseng on behalf of Inteplast to Gary Chen on July 16, 2008 did not contain the Nullity Provision.[36]  Gary Chen asserts that "[he] did not want to execute the personal guarantee but Inteplast promised [him] that the guarantee would be null and void once Inteplast had a security interest in property of APV" and he "substantially relied

---

[32]    *See* Ben Tseng Dep. [Exh. 5 to Doc. # 76], at 130:18-131:9.

[33]    Personal Guarantee Agreement [Exh. 12 to Doc. # 52] ("PGA").  The PGA, along with the Nullity Provision, were drafted and signed in English.

[34]    *Id.*, ¶ 2.

[35]    *Id.*, ¶ 12.

[36]    Email from Ben Tseng to Alpha Plastics, dated July 16, 2008, and accompanying attachment [Exh. 11 to Doc. # 52], at 3.

on that promise and executed the guarantee."[37]   Inteplast, in contrast, asserts that Gary Chen added the Nullity Provision without notice to or the agreement of Inteplast.[38] The PGA, by its terms, is governed by New Jersey law.[39]

The parties' relationship deteriorated in 2009.  Inteplast "substantially reduced" its plastic bag purchases from APV in June of that year and completely stopped purchasing from APV that August.[40]   APV paid interest on Inteplast's loans through July 2009 and ceased all payments thereafter.[41]

At some point in 2009, the United States imposed anti-dumping tariffs on the import of plastic bags from Vietnam.[42]   The tariffs were applied to APV.[43]   In August 2010, Inteplast, Gary Chen, and Mi-Yi Chen decided to close APV and try to sell the

---

[37]    Gary Chen Decl., ¶ 5.

[38]    Ben Tseng Decl., ¶ 5.

[39]    PGA, ¶ 10 ("This Guarantee shall be governed by the law of the state of New Jersey without regard to the rules concerning choice of law . . .").

[40]    Gary Chen's Response [Doc. # 62], at 5-6; Summary of Inteplast's Purchases [Exh. 8 to Doc. # 62].  Spring Packaging, a Texas-based purchaser of plastic bags owned by Gary Chen, also stopped purchasing bags from APV around this time.  Gary Chen Dep., at 39:15-40:10.

[41]    Ben Tseng Decl., ¶ 6.

[42]    *See* Inteplast's Motion for Summary Judgment [Doc. # 52], at 5-6; Gary Chen Dep., at 38:18-22.

[43]    Gary Chen Dep., at 38:18-22.

company.[44]  The shareholders were not able to make a sale.[45]  APV terminated its

plastic bag production in 2010 and has been out of business since then.[46]

### B.   Potential Security Agreements

Meanwhile, on March 16, 2007, in connection with Inteplast's $756,000 loan

to APV, APV (as "Pledgor") and Inteplast (as "Pledgee") entered into a Chattel

Pledge Agreement ("CPA").[47]   In the CPA, APV "pledged" to Inteplast "the

unmovable property and equipment . . . located at Trang Bang industrial park, Trang

Bang District, Tay Ninh Province," which is the location of APV itself.[48]   That

property reportedly had, at the time of signing, a value of $1,506,0000.[49]  According

to Inteplast, APV never delivered any of this property to Inteplast.[50]   There is no

---

[44]     Ben Tseng Dep. [Exh. 2 to Doc. # 62], at 93:3-25.

[45]     *Id.*, at 96:22-97:6.

[46]     Defendant and Counterplaintiff Inteplast Group, Ltd.'s Third Amended Answer to
Chih Shen Chen's First Amended Complaint and Amended Counterclaim [Doc. # 22]
("Answer to Gary Chen"), ¶ 35.

[47]     *See* Chattel Pledge Agreement [Exh. 15 to Doc. # 52], at 1.  Gary Chen signed the
CPA on behalf of APV and Robert Wang signed for Inteplast.  *Id.*, at 4.

[48]     *Id.*

[49]     *Id.*

[50]     *See* Ben Tseng Decl., ¶ 7.  It is unclear what "delivery" Inteplast conceives of in this
respect, as the property purportedly covered by the CPA was a "building and factory"
and "equipment" (presumably, large machines) located in Vietnam.

record of APV or Gary Chen having registered Inteplast's loans with Vietnam's Centre for Regulation of Transactions and Assets.[51]   The CPA, by its terms, is governed by Vietnamese law.[52]

On February 13, 2012, over two years after APV's plant ceased operating and after this lawsuit was filed, Gary Chen, on behalf of APV, signed and delivered to Inteplast a pledge agreement ("First Pledge Agreement").[53]   There is no evidence that the document was ever counter-signed by Inteplast.[54]   Under the First Pledge Agreement, APV (the "Pledgor"), "in order to secure a line of credit in the amount of $1,256,000," conveyed a security interest in "all of Pledgor's rights, title, and interest in property of Pledgor, including fixtures and equipment," which is described as the building and factory located at 7th Street – Industrial Zone of Trang Bang in An Tinh, Vietnam.[55]   The First Pledge Agreement recites that it is governed by Texas law.[56]

Finally, on July 11, 2013, more than a year after the First Pledge Agreement,

---

[51]   Third Hoa Decl., ¶ 4.

[52]   Chattel Pledge Agreement, at 4 ("This agreement shall be governed and construed in accordance with the laws of Socialist Republic of Vietnam.").

[53]   Pledge Agreement, dated February 13, 2012 [Ex. 16 to Doc. # 52].

[54]   *See id.*, at 2.

[55]   *Id.*, at 1.

[56]   *Id.*, at 1-2.

Gary Chen, on behalf of APV, signed a second pledge agreement ("Second Pledge Agreement") in favor of Inteplast.[57]  Like the First Pledge Agreement, the Second Pledge Agreement is not counter-signed by Inteplast.  The Second Pledge Agreement conveys to Inteplast a security interest in "all of Pledgor's rights, title and interest in all property of Pledgor including all equipment and inventory, and all fixtures" and stated it is signed "in order to secure a line of credit in the amount of $1,256,000."[58] The Second Pledge Agreement does not contain a choice of law provision.

### C.     Gary Chen's Claims and Inteplast's Counterclaims

On January 31, 2012, Gary Chen filed this suit against Inteplast, seeking a declaratory judgment that the PGA is null and void and that he has no obligations under it.[59]  Inteplast countersues for (1) breach of the PGA; (2) breach of various oral contracts; and (3) several theories of common law and statutory fraud.[60]

On August 16, 2012, APV filed an intervenor complaint against Inteplast, requesting a declaratory judgment that it has no obligation to repay Inteplast's loans

---

[57]     Pledge Agreement, dated July 11, 2013 [Exh. G to Exh. 4 to Doc. # 62].

[58]     *Id.*

[59]     Plaintiff's First Amended Complaint [Doc. # 19] ("Complaint"), ¶¶ 16-19.  A former plaintiff in this case, Fu Chuan Wang, dismissed with prejudice all of her claims against Inteplast.  *Id.*, at 1 n.1

[60]     Answer to Gary Chen, ¶¶ 39-55.

and claiming that Inteplast breached a purchase agreement between APV and Inteplast.[61]   In response, Inteplast asserts counterclaims against APV for breach of contract, common law fraud, and statutory fraud.[62]

## II.   **LEGAL STANDARDS**

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P.  56(a); *Celotex*, 477 U.S. at 322-23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

---

[61]   APV's Intervenor Complaint [Doc. # 24], ¶¶ 14-17.

[62]   Inteplast's Answer to APV's Intervenor Complaint [Doc. # 25] ("Answer to APV"), ¶¶ 18-28.  On August 16, 2013, the Court denied as moot a motion to dismiss APV's Intervenor Complaint [Doc. # 72].

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005). The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted). "An issue is material if its resolution could affect the outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most

favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (holding that unverified pleadings do not "constitute competent summary judgment evidence"). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

The Court may make no credibility determinations or weigh any evidence, and must disregard all evidence favorable to the moving party that the jury is not required to believe. *See Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 229 (5th Cir. 2010) (citing *Reaves Brokerage Co.*, 336 F.3d at 412-413). The Court is not required to accept the nonmovant's conclusory allegations, speculation, and unsubstantiated assertions which are either entirely unsupported, or supported by a mere scintilla of

evidence. *Id.* (citing *Reaves Brokerage*, 336 F.3d at 413). Affidavits cannot preclude summary judgment unless they contain competent and otherwise admissible evidence. *See* FED. R. CIV. P. 56(c)(4); *Love v. Nat'l Med. Enters.*, 230 F.3d 765, 776 (5th Cir. 2000); *Hunter-Reed v. City of Houston*, 244 F. Supp. 2d 733, 745 (S.D. Tex. 2003). A party's self-serving and unsupported statement in an affidavit will not defeat summary judgment where the evidence in the record is to the contrary. *See In re Hinsley*, 201 F.3d 638, 643 (5th Cir. 2000) ("A party's self-serving and unsupported claim that she lacked the requisite intent is not sufficient to defeat summary judgment where the evidence otherwise supports a finding of fraud." (citation omitted)).

Finally, "[w]hen evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *See id.* (internal citations and quotations omitted).

## III. <u>INTEPLAST'S CLAIMS AGAINST GARY CHEN</u>

Inteplast moves for summary judgment on (a) its breach of PGA claim against

Gary Chen[63] and (b) its claims of breach of various oral contracts with Gary Chen.[64]

Gary Chen moves for summary judgment on (a) Inteplast's breach of contract claims (*i.e.*, the oral agreements Inteplast seeks to enforce) and (b) Inteplast's common law and statutory fraud claims.[65]   For the reasons addressed below, the Court denies Inteplast's Motion for Summary Judgment on its breach of PGA claim and breach of contract claims.   The Court grants in part and denies in part Gary Chen's Motion for Summary Judgment on Inteplast's claims of breach of contract, common law fraud, and statutory fraud.

### A.   Inteplast's Breach of PGA Claim

Under the PGA, Gary Chen "unconditionally guarantees prompt payment when due of any existing or future Indebtedness of [APV]."[66]   The final version of the PGA also includes the Nullity Provision added by Gary Chen, which provides that the PGA "will become null and void once Inteplast acquires security interest on Debtor's

---

[63]    Answer to Gary Chen, ¶¶ 39-44.

[64]    *Id.*, ¶¶ 46-49.

[65]    The Court also takes notice of the other claims pending in this case which are not the subject of any motion for summary judgment, namely Gary Chen's declaratory judgment claim against Inteplast, APV's declaratory judgment and breach of contract claims against Inteplast, and Inteplast's breach of contract, common law fraud, and statutory fraud claims against APV.

[66]    PGA, ¶ 1.

property."  Inteplast claims that Gary Chen "is in default of his obligations to Inteplast under his personal guarantee."[67]  More particularly, Inteplast asserts that the Nullity Provision is invalid and that, in any event, the various pledge agreements from Gary Chen on behalf of APV do not give Inteplast a "security interest" in APV's property.[68]

Gary Chen does not dispute that APV is indebted to Inteplast based on the loans Inteplast provided APV.  Rather, Gary Chen argues that there are genuine issues of material fact as to the validity of the Nullity Provision and whether the pledge agreements give Inteplast a "security interest" that prevents the Court from granting Inteplast's motion.[69]

### 1. Choice of Law

"In making a choice of law determination, a federal court exercising diversity jurisdiction must apply the choice of law rules of the forum state, here Texas." *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  Texas courts typically enforce contractual choice of law provisions.  *Smith v. EMC Corp.*, 393 F.3d 590, 597 (5th Cir. 2004).

---

[67]     Answer to Gary Chen, ¶ 40.

[68]     Inteplast's Motion for Summary Judgment [Doc. # 52], at 7-16.

[69]     Gary Chen's Response [Doc. # 62], at 8-14.

The PGA contains a New Jersey choice of law provision.[70]  Both parties agree that New Jersey law governs the PGA, and neither party contests the validity of the choice of law provision.[71]  Thus, the Court concludes that New Jersey law governs interpretation of the PGA's provisions.

The parties disagree, however, about the law applicable to determining whether the Nullity Provision has been met.  According to its terms, written in English by Gary Chen, the Nullity Provision applies if Inteplast "acquires security interest on [APV's] property."[72]  Inteplast argues that it can only acquire a security interest in certain property if such an interest is created under the law of the jurisdiction in which the property is located.  Thus, Inteplast claims that Vietnamese law should dictate whether it acquired a security interest, since the property at issue (APV's land and equipment) is located in Vietnam.[73]  Gary Chen, on the other hand, argues that the PGA's choice-of-law provision controls "all matters relating to [his] guarantee,"

---

[70]     PGA, ¶ 10.

[71]     *See* Plaintiff's Memorandum of Law on Choice-of-Law [Doc. # 84], at 5-6; Defendant's Submission of Jurisdictional Law [Doc. # 85], ¶ 11.

[72]     PGA, ¶ 12.  The quoted language appears to lack an article ("a" or "the") or adjective (*e.g.*, "any") before "security interest," which may have helped to elucidate the term's meaning.  Reviewing Gary Chen's deposition, the Court notes that English may not be Gary Chen's first language.

[73]     Inteplast's Submission of Jurisdictional Law [Doc. # 85], ¶¶ 24-30.

including whether Inteplast acquired a security interest, and thus New Jersey law should apply.[74]

Under the PGA, the Court must initially look to New Jersey law to apply the Nullity Provision and thus determine whether Inteplast has acquired a security interest.  It appears that New Jersey courts would look to the law of the situs of the property to determine whether Inteplast acquired an interest in that property.[75]  New Jersey courts have generally adopted the Restatement (Second) of Conflict of Laws in analyzing choice of law issues.  *See generally, e.g.*, *P.V. ex rel. T.V. v. Camp Jaycee*, 922 A.2d 761, 764-65 (N.J. Super. Ct. App. Div. 2007); *Bell v. Merchs. and Businessmen's Mut. Ins. Co.*, 575 A.2d 878, 880-81 (N.J. Super. Ct. App. Div. 1990).  Under the Restatement, whether a conveyance transfers an interest in land is determined "by the law that would be applied by the courts of the situs."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 223(1).  Furthermore, whether a conveyance transfers an interest in chattel is "determined by the local law of the state which . . . has the most significant relationship to the parties, the chattel and the conveyance," with greater weight usually given to the "location of the chattel . . . at

---

[74]     Gary Chen's Response [Doc. # 62], at 9-10.

[75]     The Court has not located, nor have the parties pointed the Court to, any New Jersey case law on point.

the time of conveyance."  RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 244.

The property and chattel (*i.e.*, equipment) in dispute here is, and at the time of any

purported conveyance was, located in Vietnam.  Thus, New Jersey courts (and thus

this Court in their stead) must look to Vietnamese law, the situs of the property, to

determine whether Inteplast acquired a security interest in APV's property.

### 2.    Is the Nullity Provision Part of the PGA?

In its Motion for Summary Judgment, Inteplast intimates that the Nullity

Provision is invalid.[76]  Inteplast argues, based on a comparison of the final PGA and

a previous draft, that "Chen added the provision . . . without informing Inteplast and

without Inteplast's agreement."[77]

New Jersey courts have adopted the parol evidence rule, which "prohibits the

introduction of evidence that tends to alter an integrated written document."  *Conway*

*v. 287 Corporate Center Associates*, 901 A.2d 341, 346 (N.J. 2006) (citing

RESTATEMENT (SECOND) OF CONTRACTS § 213 (1981)).  The rule applies to

"documentary as well as oral evidence."  *Id.* (citing 9 WIGMORE ON EVIDENCE

---

[76]    *See* Inteplast's Motion for Summary Judgment [Doc. # 52], at 16.  Inteplast does not directly argue that the Nullity Provision is an invalid part of the contract and, in any event, does not explain its position in any detail or cite any legal authority in support of its position.

[77]    *Id.*

§ 2400, at 5 (Chadbourn rev. 1981)).  Furthermore, to the extent parol evidence is permissible, "[s]uch evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said."  *Id.* at 347 (quoting *Atlantic N. Airlines, Inc. v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953)).

The Court concludes that the Nullity Provision is validly part of the PGA under New Jersey law.  The PGA is an integrated agreement signed by Gary Chen and accepted by Inteplast through its conduct in lending APV money.  *See Chance v. McCann*, 966 A.2d 29, 41 n.6 (N.J. Super. Ct. App. Div. 2008) (citing the Restatement (Second) of Contracts for the proposition that "[a]n integrated agreement is a writing or writings constituting a final expression of one or more terms of an agreement").  There is no ambiguity in the PGA other than in the meaning of the Nullity Provision.  Inteplast merely seeks to excise the Nullity Provision from the PGA based on parol evidence that purportedly shows that it did not intend to agree to that provision.  Parol evidence is impermissible in this case, and the Nullity Provision is therefore a part of the PGA.[78]  Moreover, Inteplast was on notice of the

---

[78]   *See Chance*, 966 A.2d at 41 ("Because there is no ambiguity in the agreement as written with respect to that issue, there is no need for parol or extrinsic evidence to interpret it . . . . Simply put, [defendant] wishes to use parol evidence to demonstrate that, when the partnership agreement says that 'there is due to [plaintiff] as of August

(continued...)

Nullity Provision when it received Gary Chen's signed copy of the PGA and performed that agreement without contesting or changing that provision. As the New Jersey court in *Synnex Corp. v. ADT Security Services., Inc.* stated in a related context: "We conclude that ADT's performance of the contract with Synnex by delivery and installation of the burglar alarm system constituted acceptance of the contract, despite the absence of a signature by an authorized representative of ADT, thus binding both parties to the terms of that contract . . . . The most unequivocal form of waiver of a provision of a contract reserving the right to home office approval is full performance . . ." *Synnex Corp. v. ADT Sec. Servs., Inc.*, 928 A.2d 37, 41-42 (N.J. Super. Ct. App. Div. 2007).

### 3.    Does Inteplast Have a Security Interest in Property of APV?

Gary Chen contends that the PGA is void because, he argues, the Nullity Provision has been satisfied and Inteplast now has a "security interest" in APV. In particular, he argues that three instruments, the CPA, First Pledge Agreement, and Second Pledge Agreement, have conveyed to Inteplast a security interest in APV's property.

Inteplast, in contrast, argues that none of these instruments are sufficient to

---

(...continued)

> 1, 1998, an amount of $636,000,' it really means that [plaintiff] was owed $160,000. The parol evidence rule does not permit him to do so.").

convey to Inteplast a legally cognizable security interest in APV's property. Inteplast contends that APV never actually "delivered" any property to Inteplast, and that Chen did not have legal authority in signing the CPA and First Pledge Agreement to award Inteplast a security interest in any of APV's property.[79] Inteplast also notes that the CPA was signed over a year before the PGA.[80] Inteplast also argues that, at most, the pledge agreements could only have conveyed a security interest in APV's movable property, and that there is no dispute that the instruments did not convey any interest in APV's immovable property (such as its land).[81] To the extent that Gary Chen did have legal authority to execute the Second Pledge Agreement, Inteplast asserts that the agreement is clear that "[Gary] Chen and APV do not intend to convey all property to Inteplast" and, further, that APV's property is now essentially valueless, rendering any pledge of an interest in that property ineffectual to void the PGA.[82]

Genuine issues of material fact prevent the Court from granting Inteplast summary judgment on its breach of PGA claim. For instance, the Nullity Provision itself is ambiguous. On the one hand, the provision can be read to provide for

---

[79]    *See* Inteplast's Motion for Summary Judgment [Doc. # 52], at 8-11.

[80]    *See id.*, at 9-10.

[81]    *See* Inteplast's Supplemental Brief [Doc. # 91], at 10-14.

[82]    *See* Inteplast's Reply [Doc. # 73], at 8-10.

nullification of the PGA once Inteplast acquires "some" security interest in APV's property, however minimal that interest may be.  On the other hand, the provision can reasonably be interpreted to mean that Inteplast must acquire a security interest in "all" of APV's property, or at least an interest large enough to cover Inteplast's loans to APV, in order to nullify the PGA.[83]  Neither party has provided sufficient evidence to establish the meaning of this provision as a matter of law.[84]  *See, e.g.*, *Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Penn. Mfrs. Ass'n Ins. Co.*, 41 A.3d 586, 598-600 (N.J. Super. Ct. App. Div. 2012) (affirming trial court's denial of summary judgment on grounds that controlling document was ambiguous because it was "reasonably susceptible of two interpretations").

Similarly, legal and factual disputes remain concerning whether Gary Chen's unilateral conveyance of a security interest in certain APV assets to Inteplast was

---

[83]   The Nullity Provision is also unclear whether APV, to nullify the PGA, was required to provide Inteplast with a security interest in specific parts of its property, such as its land, and the relevant pledge agreements are unclear whether APV actually pledged an interest in its land.

[84]   The Court notes that under New Jersey law an ambiguous writing is "to be strictly construed against the party preparing it," *Schor v. FMS Fin. Corp.*, 814 A.2d 1108, 1113 (N.J. Super. Ct. App. Div. 2002) (quoting *Orange Twp. v. Empire Mortg. Serv., Inc.*, 775 A.2d 174, 181 (N.J. Super. Ct. App. Div. 2001)), and the parties do not contest that Gary Chen drafted the Nullity Provision.

sufficient to trigger the Nullity Provision.[85]  The parties have not provided adequate Vietnamese legal authority to enable the Court to determine, as a matter of law, whether a unilateral conveyance of a security interest is sufficient to grant the opposing party an enforceable security interest and what obligations Inteplast has to recognize the offered security interests.[86]

Additionally, other genuine material legal disputes concerning Vietnamese law remain.[87]  First, there is a question regarding Gary Chen's legal authority to convey

---

[85]   Foreign law must be proven with sufficient clarity to allow the Court to apply the law to the claims at issue.  *See In re Avantel, S.A.*, 343 F.3d 311, 321 (5th Cir. 2003) ("As the party moving to apply Mexican privilege law, Avantel had the burden of proving its substance to a reasonable certainty such that the district court could apply it to the documents at issue.").

[86]   The Court notes that Gary Chen's own expert on Vietnamese law intimates that Inteplast can reject the pledge agreements by refusing to accept the security interest offered.  *See* Declaration of Nguyen Anh Hao [Exh. 11 to Doc. # 62] ("Nguyen Anh Hao Decl."), ¶ 7 ("Article 122.1 of the Civil Code allows Inteplast the option to invalidate the Pledge Agreement by refusing to accept the security interest.").

[87]   The Court may take judicial notice only of an adjudicative fact "that is not subject to reasonable dispute because it (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  FED. R. EVID. 201(b); *Jackson v. Biedenharn*, 429 F. App'x 369, 373 (5th Cir. 2011) ("As for the motion to take judicial notice, the facts that Jackson does present are not susceptible of accurate and ready determination and thus are not amenable to judicial notice.").  The Court will not take judicial notice of the parties' competing submissions on Vietnamese law, as each party's expert offers a description of the relevant law that is contested.  *See, e.g.*, *Getty Petroleum Mktg., Inc v. Capital Terminal Co.*, 391 F.3d 312, 333 (1st Cir. 2004) ("District courts need not go to Herculean lengths to discover the law when counsel do not adequately present it.  Rather, the court should have the discretion to determine
(continued...)

a security interest in APV's property to Inteplast.  It is undisputed that Gary Chen was not the legal representative of APV until July 5, 2013, after the CPA and First Pledge Agreement were issued.  Gary Chen contends, however, that APV has ratified those agreements.  It is apparent that APV's "ratification" of these agreements only occurred after Gary Chen became APV's legal representative, six years after the CPA, more than a year after the First Pledge Agreement, and almost a year after commencement of this suit.[88]  Neither party has provided the Court with Vietnamese legal authority regarding the process for or effect of ratification by a corporation of previously executed contracts entered into by a principal before he had authority to do so.  Nor is there authority in the record on the issue of the validity of ratification of prior transfers of putative assets after the corporation ceases doing business.

The parties' experts have also presented conflicting opinions about the effectiveness of pledges of collateral as security for indebtedness in the absence of registration or a public filing of notice of the conveyance. Inteplast's expert on Vietnamese law states that "secured transactions involving assets attached to land in

---

[87]      (...continued)
          whether the proponent's submission sufficiently enables the court to ascertain the law. . . . Under that standard, if the court cannot ascertain the law from counsel's submission, then, virtually by definition, the submission is inadequate.").
          Accordingly, the Court denies Inteplast's Motion for Judicial Notice of Foreign Law [Doc. # 33] and Plaintiffs' Motion for Judicial Notice of Foreign Law [Doc. # 56].

[88]      Gary Chen Decl., ¶ 4.

Vietnam must be registered in order to be enforceable."[89]  Gary Chen's expert, in

contrast, states that the security transactions in this case did not need to be registered

with the Vietnamese authorities because the transactions involved equipment (*i.e.*,

movable property).[90]  The Court finds there are numerous questions of material fact

regarding Vietnamese law and other matters.  Summary judgment on enforceability

of the PGA and its Nullity Provision is unwarranted at this time.

Accordingly, the Court denies Inteplast's Motion for Summary Judgment on

its claim for breach of the PGA.[91]

## B.    Inteplast's Non-PGA Claims

Inteplast's remaining counterclaims are not models of clarity, and the Court has

struggled to decipher precisely the causes of action alleged.  With the aid of the

parties' briefing and counsels' clarifications at oral argument, held on January 15,

2014, the Court determines Inteplast's claims are the following:

Inteplast sues for breach of contract claiming that Gary Chen breached several

---

[89]    Third Declaration of Le Thi Hoa [Exh. 8 to Doc. # 52], ¶ 4.

[90]    Nguyen Anh Hao Decl., ¶ 6.  Neither expert effectively discusses how Vietnamese law treats pledges of security interests in immovable property, which expressly is covered in the CPA.

[91]    This ruling is without prejudice to the potential judgment as a matter of law, if warranted at trial, based on presentation of admissible evidence addressing the issues discussed above.

separate agreements[92]: (1) an agreement in approximately 2005 that if Inteplast invested funds in APV, then Gary Chen would register Inteplast with the Vietnamese authorities as a shareholder of APV; (2) an agreement in approximately 2007 that Inteplast would contribute additional capital to APV and that Gary Chen would contribute capital in a pro rata fashion; and (3) an agreement in approximately 2007 that Inteplast would loan APV additional funds and that Gary Chen, as principal of APV, would cause APV to increase its production capacity to 900 tons per month.[93] Gary Chen contests the existence of each of these contracts.[94]  The Court analyzes each agreement separately in conformity with Inteplast's structure of its claims.

Inteplast also identifies the following alleged misrepresentations that it claims constitute common law and statutory[95] fraud: (1) in approximately 2005, "[Gary]

---

[92]     In response to questioning from the Court at the January 15, 2014, hearing, counsel for Inteplast pointed the Court to certain documents which, he claims, "constitute the contracts and promises related to these claims."  *See* Inteplast's Supplemental Brief [Doc. # 91], at 4-5; Exhibits A-1 to A-6 to Doc. # 91.  None of these documents actually constitute an agreement between Gary Chen and Inteplast, though—to some limited extent—they arguably restate agreements that allegedly were made orally.  At the hearing, however, counsel for Inteplast stated that these agreements were both oral and written.  Thus, without documentary proof of a written agreement, the Court assumes that any non-PGA agreement between Gary Chen and Inteplast was oral.

[93]     *See* Inteplast's Response [Doc. # 76], at 15-17.

[94]     *See* Gary Chen's Motion for Summary Judgment [Doc. # 55], at 11.

[95]     Inteplast's statutory fraud claim is brought pursuant to Section 27.01 of the Texas Business and Commerce Code, *see* Answer to Gary Chen, ¶ 53, which pertains to
(continued...)

Chen represented to Inteplast that in exchange for its initial investment in APV in 2005, Inteplast would be a shareholder in APV, owning 20% of its shares;" (2) in approximately 2006, "[Gary] Chen represented to Inteplast that he would sell Inteplast an additional 20% of the shares of APV for an additional investment of $180,000 (for a total ownership of 40% of APV's shares);" (3) in approximately 2005, "[Gary] Chen represented to Inteplast that he would register those shares with the authorities in Vietnam;" (4) in approximately 2007, "[Gary] Chen also represented that if Inteplast would contribute additional funds for the expansion of APV, that, in turn, he would contribute an equal amount" (*i.e.*, a pro rata contribution); and (5) in approximately 2007, "[Gary] Chen also represented that if Inteplast would loan funds to APV, he, as principal of APV, would cause APV to increase its capacity to 900 tons per month".[96]

### 1.    Choice of Law for Inteplast's Other Counterclaims

As noted above,[97] a federal court sitting in diversity starts the choice of law analysis by looking to the rules of the forum state.  In Texas, state courts use the

---

(...continued)
"[f]raud in a transaction involving real estate or stock in a corporation or joint stock company," TEX. BUS. & COM. CODE § 27.01(a).

[96]    *See id.*, at 22-23.  At the hearing held on January 15, 2014, Inteplast reaffirmed these contentions, and provided very general dates for each putative misrepresentation.

[97]    *See supra* Part III.A.1.

"most significant relationship" test from the Restatement (Second) of Conflict of Laws for all choice of law decisions for claims such as those in issue. *Id.* (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420-21 (Tex. 1984)). In general, the starting point for choice of law questions is Section 6 of the Restatement, which lists several general factors to be used by courts:

    (a)    the needs of the interstate and international systems;
    (b)    the relevant policies of the forum;
    (c)    the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue;
    (d)    the protection of justified expectations;
    (e)    the basic policies underlying the particular field of law;
    (f)    certainty, predictability, and uniformity of result; and
    (g)    ease in determination and application of the law to be applied.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 6(2).

### a.    Breach of Contract Claims

In addition, "[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6." RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(1). Where, as here, there is no valid choice of law provision in the contract, the more specific matters to be considered in the § 6 analysis include:

    (a)    the place of contracting,

    (b)    the place of negotiation of the contract,

    (c)    the place of performance,

    (d)    the location of the subject matter of the contract, and

    (e)    the domicile, residence, nationality, place of incorporation and
        place of business of the parties.

*Id.*, § 188(2); *see Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 696 (Tex. 2003)

(citing Section 188 of the Restatement).

The parties disagree about which jurisdiction's law applies to Inteplast's breach

of contract claims.[98]   Inteplast contends that Texas law should apply, since the

agreements at issue "were entered into in either Texas or Vietnam by a resident of

Texas and a Texas limited partnership."[99]   Gary Chen counters that New Jersey law

should apply because "[t]o the extent that negotiations occurred, they took place in

New Jersey where Chen's alleged oral statements were relied upon and the alleged

---

[98]    Inteplast's counterclaim for breach of contract does not identify the contracts it alleges were breached.  *See* Answer to Gary Chen, ¶¶ 46-49.  In response to the Court's questioning at the January 15, 2014, hearing, Inteplast, through its counsel, identified the following as the contracts it alleges were breached: (1) an agreement that if Inteplast invested funds with APV, Gary Chen would register Inteplast as a shareholder; (2) an agreement that if Inteplast contributed additional capital to APV, Gary Chen would contribute capital in a pro rata fashion; and (3) an agreement that if Inteplast loaned APV additional money, Gary Chen would cause APV to increase its production capacity.  *See* Inteplast's Supplemental Brief [Doc. # 91], at 3-4.

[99]    Inteplast's Submission of Jurisdictional Law [Doc. # 85], ¶ 32.  Inteplast is a Texas limited partnership whose partners all reside in New Jersey and/or Delaware.  *See* Complaint, ¶ 19; Inteplast's Submission of Jurisdictional Law [Doc. # 85], at 2.

agreements were entered."[100]

The Court must carry with the case the issue of the law applicable to Inteplast's breach of contract counterclaim. The parties' briefing and evidence are inadequate to establish, as a matter of law, which jurisdiction's law applies to this claim.[101] The Court has admissible evidence only on the fifth Section 188 factor ("the domicile, residence, nationality, place of incorporation and place of business of the parties"): Chen is domiciled in and is a resident of Texas, while Inteplast is a Texas limited partnership whose partners reside in New Jersey. No admissible evidence has been offered establishing where the parties negotiated or executed the contracts.[102] However, evidence of record supports the contention that the "subject matter" of the various contracts was located in Vietnam, which suggests that Vietnamese law, not

---

[100]   *See* Gary Chen's Memorandum on Choice of Law [Doc. # 84], at 6.

[101]   In response to some of the Court's questions at the January 15, 2014, hearing, Inteplast identified and supplied relevant documents which it claims purport to document the oral agreements between the parties. *See generally* Exhibits A-1 to A-6 to Doc. # 91. Assuming these documents do demonstrate contractual agreements between the parties, the Court notes that none of these documents provide information relevant to evaluate the Restatement factors, such as the place of contracting, the place of negotiation, or the place of performance.

[102]   Inteplast contends the agreements "were entered into in either Texas or Vietnam," Inteplast's Submission of Jurisdictional Law [Doc. # 85], at 15, while Gary Chen argues the parties "negotiated" in New Jersey, Gary Chen's Memorandum on Choice of Law [Doc. # 84], at 6. These contentions lack any citation to admissible evidence. They are insufficient to support a decision on which jurisdiction's law is applicable.

Texas or New Jersey law, might apply to these claims.  In short, the parties have not supplied meaningful factual support for the Court to determine which jurisdiction's law is applicable to Inteplast's non-PGA breach of contract claims.  This choice of law question will be decided at trial.

### b.    Fraud Claims

The parties disagree about which jurisdiction's law applies to Inteplast's claims of common law fraud and statutory fraud.[103]  Inteplast argues that Texas law applies because "[t]hese misrepresentations were made by a resident of Texas to a Texas limited partnership and, therefore, Texas law should apply as the state with the most significant relationship to the claim."[104]  Gary Chen argues that New Jersey law should apply because Inteplast received the representations, acted in reliance upon them, and suffered any alleged harm as a result in New Jersey.[105]

With regard to claims of fraud, the Restatement states that "[w]hen the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiff's action in reliance took place in the state

---

[103]    *See supra* nn. 95 & 96 and accompanying text.

[104]    Inteplast's Submission of Jurisdictional Law [Doc. # 85], ¶ 33.  As noted, Inteplast is a Texas limited partnership whose partners all reside in New Jersey or Delaware. *See supra* n. 99.

[105]    Gary Chen's Memorandum on Choice of Law [Doc. # 84], at 8.  Gary Chen also contends that he made the statements in either New Jersey or Texas.  *Id.*

where the false representations were made and received, the local law of this state

determines the rights and liabilities of the parties."   RESTATEMENT (SECOND) OF

CONFLICT OF LAWS § 148(1).  Where, however, "plaintiff's action in reliance took

place in whole or in part in a state other than that where the false representations were

made," a court should consider:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 148(2).

The parties have introduced evidence that presents the parties' domicil and/or

residence[106] and that the representations related, in large part, to Gary Chen's actions

vis-a-vis APV, a Vietnamese company.  The parties, however, have not supplied

sufficient information to enable the Court to decide the choice of law issue on

Inteplast's fraud claims.  The parties' counsels' assertions in their briefing are not

admissible evidence.  There is no admissible evidence of where Gary Chen made the

---

[106]     *See supra* Part III.B.1.a.

alleged representations, where Inteplast's representatives were when they received those representations, and where Inteplast acted in reliance on the representations. The Court therefore declines at this time to decide the choice of law question on Inteplast's fraud counterclaims. The issue must be held until trial to enable the Court to receive competent evidence supporting their positions.

### 2.    Statute of Limitations on Inteplast's Non-PGA Counterclaims

#### a.    Legal Standard

Gary Chen argues that each of Inteplast's counterclaims is barred by the applicable statute of limitations under Texas limitations law. Notwithstanding the Court's inability to decide the applicable substantive law for Inteplast's non-PGA counterclaims, the Court has sufficient information to decide certain statute of limitations issues governing these claims. Texas courts treat statutes of limitation as a procedural issue. *See Baker Hughes, Inc. v. Keco R. & D., Inc.*, 12 S.W.3d 1, 4 (Tex. 1999); *Intevep, S.A. Research and Technological Support Establishment v. Sena*, 41 S.W.3d 391, 394 (Tex. App.–Dallas 2001, no pet.); *see also Estate of Vasquez-Ortiz v. Zurich Compania De Suguros, S.A.*, 2013 WL 105005, at *3 n.7 (S.D. Tex. Jan. 8, 2013) (Ellison J.) ("Texas courts have consistently treated statutes of limitations as procedural"). Thus, regardless of which jurisdiction's law applies substantively to Inteplast's breach of contract and fraud claims, Texas statutes of

limitations apply to these claims.  *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938) ("Except in matters governed by the Federal Constitution or by acts of Congress, the law to be applied in any case is the law of the state."); *Citigroup Inc. v. Federal Ins. Co.*, 649 F.3d 367, 374 (5th Cir. 2011) ("We apply state statutes of limitations in diversity cases.").

In Texas, breach of contract claims carry a four-year limitations period.  *See* TEXAS CIV. PRAC. & REM. CODE § 16.051 (stating that all claims "for which there is no express limitations period . . . must be brought not later than four years after the day the cause of action accrues"); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). Fraud claims are also subject to a four-year limitations period.  TEXAS CIV. PRAC. & REM. CODE § 16.004(a) ("A person must bring suit on the following actions not later than four years after the day the cause of action accrues . . . (4) fraud").[107]

Under Texas law, the discovery rule "defers the accrual of a claim until the plaintiff knew or, in the exercise of reasonable diligence, should have known of the wrongfully caused injury." *J.M.K. 6, Inc. v. Gregg & Gregg, P.C.*, 192 S.W.3d 189, 196 (Tex. App. – Houston [14th Dist.] 2006, no pet.) (citing *Wagner & Brown, Ltd. v. Horwood,* 58 S.W.3d 732, 735 (Tex. 2001)).  The discovery rule "only defers

---

[107]   The Court takes judicial notice of the relevant limitations periods in New Jersey, which are six years for both breach of contract and fraud claims.  *See* N.J. Stat. Ann. § 2A:14-1.

accrual of a claim until the plaintiff discovers, or should have discovered through reasonable diligence, the injury and that [the injury] was likely caused by the wrongful acts of another.  *Id.*  The inquiry focuses on when "the plaintiff, in the exercise of reasonable diligence, should have discovered the 'nature of his injury.'" *Id.* at 197 (quoting *Childs v. Haussecker,* 974 S.W.2d 31, 40 (Tex. 1998)).  It is not an inquiry into the "plaintiff's subjective belief as to whether the injury could be remedied affordably" or whether plaintiff knew the extent of its damages.  *Id.*; *see also id.* (citing *Schneider Nat'l Carriers, Inc. v. Bates,* 147 S.W.3d 264, 279 (Tex. 2004) ("[E]ven when the discovery rule applies, accrual occurs upon notice of injury, even if the claimant does not yet know the full extent of damages or the chances of avoiding them.").

The Texas Supreme Court has "restricted the discovery rule to exceptional cases to avoid defeating the purposes behind the limitations statutes." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313 (Tex. 2006).  In Texas, courts may only apply the discovery rule "when an injury is both inherently undiscoverable and objectively verifiable." *Schneider Nat'l Carriers*, 147 S.W.3d at 279.  "Inherently undiscoverable" means that the injury is "by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence." *Wagner & Brown Ltd.*, 58 S.W.3d at 735.  Courts in Texas look at the inherent undiscoverability of a

claim on a categorical basis. *Id.* "A defendant seeking summary judgment on the basis of limitations must prove when the cause of action accrued and must negate the discovery rule by proving as a matter of law that there is no genuine issue of fact about when the plaintiff discovered or should have discovered the injury." *Malone v. Sewell*, 168 S.W.3d 243, 250 (Tex. App.—Fort Worth 2005, pet. denied).

### b.      Analysis

### i.      Inteplast's Breach of Contract Claims

As noted, Inteplast asserts that Gary Chen breached three separate agreements he entered into with Inteplast.  The Court addresses each alleged agreement in turn.

***Agreement to Register.***— First, Inteplast alleges that Gary Chen breached an agreement that, if it invested with APV, Gary Chen would register Inteplast as a shareholder in APV with Vietnamese authorities.  The Court holds this breach of contract theory is time-barred.

Under both Texas and New Jersey law,[108] where an agreement does not fix a time for performance, courts assume that a reasonable time for performance was implicitly intended.  *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 486 (Tex. App.–Houston [1st Dist.] 2006, pet. denied); *Becker v. Sunrise at Elkridge*, 543 A.2d

---

[108]    The Court cites law from both jurisdictions without deciding which jurisdiction's law applies to Inteplast's counterclaims.

977, 983 (N.J. Super. Ct. App. Div. 1988).  Inteplast's first investment with APV occurred in or about November or December, 2005.[109]  The agreement itself, as described by the parties, did not specify a deadline by which Gary Chen was to complete the registration.  Testimony from various Inteplast representatives suggests without contradiction that the registration was to occur within six months of Inteplast's investment, that is, by June 2006.[110]  Other documentary evidence, supplied by Inteplast, suggests that Gary Chen intimated that registration of Inteplast's shares would be complete by June 2007, at which point "[Inteplast] will be the official shareholder and listed on official documents."[111]  The Court finds from the evidence presented that the parties' intended that Gary Chen register Inteplast's shares no later than June 2007.  Inteplast's claim thus accrued in June 2007, when its shares were not registered and Inteplast knew or should have known that Gary Chen had breached this agreement.

---

[109]  *See* Inteplast Recommendation/Report [Exh. 4 to Doc. # 62], at 3 (indicating investment occurred in November 2005); Alpha Investment & Loan Payment Summary [Exh. 14 to Doc. # 62] (stating investment occurred on December 12, 2005).

[110]  *See* Ben Tseng Dep., at 293:8-25 (stating that he expected registration to be complete within three to six months of the promise); Joe Chen Dep., at 116:5-7 (stating that Gary Chen would register Inteplast as a shareholder from the first day of the investment).

[111]  *See* Memo from Gary Chen, dated Feb. 6, 2007 [Exh. A-6 to Doc. # 91].

The discovery rule does not aid Inteplast on this breach of contract claim. Parties to a contract must "protect [their] own interests," and "[d]ue diligence may include asking a contract partner for information needed to verify contractual performance." *Via Net*, 211 S.W.3d at 314.  While the facts of a specific case "do not govern the categorical inquiry," *id.*, the facts here are not atypical and they further suggest the discovery rule should not apply.  Here, a representative of Inteplast, Chin Joe Chen ("Joe Chen"), stated that the company learned in 2010 that Gary Chen had failed to register Inteplast as a shareholder, which date was within the applicable limitations period.[112]   There is no evidence that it was difficult for Inteplast to independently determine that the shares were not registered.  Furthermore, Joe Chen, on behalf of Inteplast, testified that "[s]ometime[s] we push[ed]" Gary Chen to register Inteplast's shares, but the witness did not state when those requests occurred.[113]   The evidence fails to raise a genuine question of fact that Inteplast lacked knowledge of the delay in registration.  At best, this testimony suggests that Inteplast's representatives knew early on that Gary Chen had not registered the shares and that Inteplast nevertheless failed to act.

This is not the type of "rare" claim in which the discovery rule can trump

---

[112]     *See* Joe Chen Dep., at 114:22-115:13.

[113]     *See id.*, at 115:5-7.

normal limitations periods in breach of contract claims.  *See id.* at 315 ("Some contract breaches may be inherently discoverable and objectively verifiable.  But those cases should be rare, as diligent contracting parties should generally discovery any breach during the relatively long four-year limitations period provided for such claims.").  The Court thus concludes that Inteplast's claim accrued more than four years before this suit was filed, and the discovery rule does not defer the claim's accrual.  This claim is therefore dismissed as barred by the statute of limitations.[114]

***Agreement to Contribute Pro Rata.***— Inteplast also alleges that Gary Chen breached an agreement to contribute additional capital on a "pro rata basis" if Inteplast contributed an additional $300,000 to APV's capital.  Here too, Gary Chen argues that Inteplast's claim is unfounded because Gary Chen's actually made his

---

[114]   Inteplast argues that even if its breach of contract and fraud claims are untimely under the general limitations period, the claims became timely when brought as a counterclaim to Gary Chen's declaratory judgment cause of action.  Section 16.069 of the Texas Civil Practice & Remedies Code states that "[i]f a counterclaim or cross claim arises out of the same transaction or occurrence that is the basis of an action, a party to the action may file the counterclaim or cross claim even though as a separate action it would be barred by limitation on the date the party's answer is required."  TEX. CIV. PRAC. & REM. CODE § 16.069(a).  Section 16.069 is not applicable here because none of Inteplast's claims, save its claim for breach of the PGA, arise out of "the same transaction or occurrence" as Gary Chen's declaratory judgment claim.  Inteplast's claims derive from statements or promises allegedly made by Gary Chen between 2006 and 2007 that are distinct from his promise in 2008 to guarantee APV's loans in exchange for another loan from Inteplast (*i.e.*, the PGA).  *See, e.g.*, *Rotella v. Pederson*, 144 F.3d 892, 895-96 (5th Cir. 1998) (rejecting application of Section 16.069 to unrelated slander claim "made eight years later in a related but separate incident").

required contribution, and in any event Inteplast's "knew or should have known that nature of its alleged injuries . . . prior to August 15, 2008."[115]

The Court holds that this claim is barred by Texas' four-year limitations period. The putative agreement between Inteplast and Gary Chen to mutually increase their capital contributions to APV was undertaken to enable APV's 2006 plant expansion.[116]   The uncontroverted evidence of record shows that Inteplast completed its required capital infusion on April 10, 2007.[117]   Like the agreement to register Inteplast's shares, this agreement did not specify a deadline by which Gary Chen was required to fund his portion.   The record evidence, however, establishes that Gary Chen, Inteplast, and Inteplast's principals understood that Gary Chen had purportedly contributed the required capital to APV by the end of February 2007.[118]   This evidence establishes at the very least that the parties understood and agreed that Gary Chen's pro rata contribution was to be made at or about the time of Inteplast's contribution.   If Gary Chen's funds in fact were not actually contributed to APV in

---

[115]       *See* Gary Chen's Reply [Doc. # 77], at 16-17.

[116]       *See* Second Ben Tseng Decl., ¶ 3; *see also* Letter from Joe Wang to Gary Chen, dated Sept. 15, 2006 [Exh. 9 to Doc. # 76], at ECF-numbered page 6.

[117]       Ben Tseng Decl. ¶ 3.

[118]       *See* Inteplast Group, Ltd. Recommendation/Report [Exh. 4 to Doc. # 55], at 4-6; Deposition of Joe Wang [Exh. 3 to Doc. # 55], at 122:1-17, 130:22-25.

the general time frame of Spring 2007, or at least by year-end, Gary Chen was in breach of the pro rata funding agreement at that time.[119]

The discovery rule does not aid Inteplast here.  Inteplast was duty-bound to protect its own interests and to ensure that Gary Chen had met his commitment to make the required contribution.  Inteplast had various ways in 2007 to determine if Gary Chen had done so, such as obtaining written evidence of the funds transfer.  This breach of contract claim therefore accrued in 2007 and is time-barred.  Accordingly, Gary Chen is entitled to summary judgment on this breach of contract claim as well.

**_Agreement to Increase APV's Production._**— Inteplast also alleges that Gary Chen breached an oral agreement that he would cause APV to increase its production capacity to 900 tons if Inteplast loaned additional funds to APV.  There is no dispute that APV never reached this production threshold.  Gary Chen, however, argues that, assuming such agreement was entered into, Inteplast should have known that the agreement was breached by late 2007.[120]

---

[119]  The Court also infers from this evidence that the parties understood at the time of the putative contract that any necessary capital contribution by Gary Chen was necessary in 2007 in order to properly complete the fundraising for the plant expansion.

[120]  *See* Gary Chen's Reply [Doc. # 77], at 14-15.  The Court does not hold here that either APV's or Inteplast's breach of contract claims relating to the May 22, 2006 Agreement are time-barred, as that issue has not yet been presented to the Court for
(continued...)

The Court denies summary judgment on this claim. The putative agreement, as presented to the Court, lacks essential terms to decide this question at this summary judgment stage. In particular, it is unclear whether Gary Chen was required to immediately cause APV's production to increase or whether he was given a reasonable amount of time to effectuate that expansion. Assuming the latter, the Court cannot infer from the record what the parties may have intended with regard to Gary Chen's obligation under this particular agreement or what would otherwise be a reasonable time for his performance. This issue is particularly difficult to decide in light of APV's initial inability to secure proper bank financing for its expansion. Thus, the Court cannot determine when this agreement allegedly was breached and whether Inteplast's current claim is time-barred. The Court accordingly denies Gary Chen's summary judgment motion on this claim.[121]

### ii. Fraud Claims

Gary Chen also asserts that each of Inteplast's fraud claims is barred by the

---

[120]    (...continued)
decision.

[121]    The Court recognizes that Gary Chen raises other, non-limitations issues as defenses to Inteplast's breach of contract claim, though he has not properly addressed those issues with regard to this agreement in particular. *See generally* Gary Chen's Motion for Summary Judgment [Doc. # 55], at 11-13. Because of the significant choice of law issues that remain with regard to the merits of Inteplast's claims, the Court will hold those contentions for a decision at trial. The Court also questions whether there was a meeting of the minds sufficient to form an enforceable agreement here.

four-year limitations period.  The statements that Inteplast identifies as fraudulent essentially track Inteplast's breach of contract theories.  Because breach of contract and fraud claims carry the same four-year limitations period under Texas law, the limitations period bars a fraud claim where it bars the parallel contract action. Accordingly, for the reasons stated above,[122] the limitations period bars Inteplast's fraud claims based on the first (Inteplast would become a 20% shareholder), second (Inteplast would become a 40% shareholder), third (Gary Chen would register the shares), and fourth (that Gary Chen would contribute additional capital on a pro rata basis) statements that Inteplast asserts were misrepresentations.  The fifth statement that Inteplast highlights (Gary Chen would cause APV to increase its capacity if Inteplast contributed capital to APV) is not barred by the limitations period, like its parallel contract cause of action.[123]

## IV.   **GARY CHEN'S AFFIRMATIVE DEFENSES**

In addition to his limitations defenses addressed above, Gary Chen generally asserts seven affirmative defenses to Inteplast's claims: (1) prior material breach of

---

[122]   *See supra* Part III.B.2.b.i.

[123]   Here too, because it is unclear which jurisdiction's law applies to this claim, the Court does not address Gary Chen's other arguments in support of his motion for summary judgment on this claim.  *See generally* Gary Chen's Motion for Summary Judgment [Doc. # 55], at 14-18.  Nevertheless, it is noted that the Court has concerns about the sufficiency of evidence in support of this fraud claim as well, in particular whether Gary Chen knew that his statement was false when made.

contract; (2) promissory estoppel; (3) equitable estoppel; (4) unclean hands; (5) offset; (6) fraud in the inducement; and (7) laches.  Inteplast moves for summary judgment on each of the defenses.  The Court here addresses only Gary Chen's defenses No. 1 through 6 to Inteplast's breach of the PGA claim.[124]  The Court grants in part and denies in part Inteplast's Motion for Summary Judgment as to Gary Chen's affirmative defenses.

## A.     Prior Material Breach

Under New Jersey law,[125] a party's breach of a material term of an agreement excuses the non-breaching party of its obligations under the agreement.  *Nolan by Nolan v. Lee Ho*, 577 A.2d 143, 146 (N.J. 1990).  Gary Chen argues that Inteplast breached the PGA by refusing to acknowledge the security interest in APV that it was conveyed.[126]  This defense is inapplicable here.  Nothing in the PGA bars Inteplast

---

[124]    Although Gary Chen does not indicate in his Answer which defenses are asserted against each claim, *see generally* Answer, ¶¶ 36-42, he has since clarified his positions, *see* Gary Chen's Chart [Doc. # 84-1], at 1.  Because the Court, as noted, has been presented with insufficient evidence to establish which jurisdiction's law applies to Inteplast's breach of contract and fraud claims, the Court reserves judgment on Gary Chen's affirmative defenses to those theories that are not time-barred and denies without prejudice Inteplast's motion for summary judgment as it relates to those affirmative defenses.

[125]    *See supra* Part III.A.1 (concluding that New Jersey law applies to Inteplast's breach of the PGA claim).

[126]    *See* Gary Chen's Response [Doc. # 62], at 15-16.

from exercising its right to dispute Gary Chen's unilateral interpretation of the PGA. Indeed, the Nullity Provision, a clause of the PGA that Gary Chen drafted, is ambiguous. Accordingly, the Court grants Inteplast's Motion for Summary Judgment as it relates to Gary Chen's prior material breach defense to Inteplast's breach of PGA claim.

### B.   Promissory Estoppel

To establish a claim of promissory estoppel under New Jersey law, a party must establish: "1) a clear and definite promise, 2) made with the expectation that the promisee will rely upon it, 3) reasonable reliance upon the promise, 4) which results in definite and substantial detriment." *Lobiondo v. O'Callaghan*, 815 A.2d 1013, 1020 (N.J. Super. Ct. App. Div. 2003). Gary Chen asserts that Inteplast promised his guarantee would be void once Inteplast acquired a security interest in APV's property, that "it was clearly foreseeable that Gary Chen would rely on" that promise, and that he in fact relied on the promise by executing the PGA.[127]

Promissory estoppel is an equitable doctrine that usually serves as an equitable avenue for affirmative relief in lieu of a breach of contract claim. *See Ballard v. Schoenberg*, 541 A.2d 258, 260 (N.J. Super. Ct. App. Div. 1988) ("Promissory estoppel is a closely related equitable doctrine, not itself a cause of action *ex*

---

[127]   Gary Chen's Response [Doc. # 62], at 16.

*contractu*, supplanting or obviating other proof of consideration."). Gary Chen appears to advance a promissory estoppel theory as a defense to payment under the PGA should the Court deem the Nullity Provision invalid.[128] Because Gary Chen has an independent declaratory judgment claim seeking to enforce the Nullity Provision, his promissory estoppel defense to Inteplast's breach of PGA claim is duplicative and moot. The Court, accordingly, dismisses Gary Chen's promissory estoppel defense. *See Mandica v. Brown*, 2007 WL 1074833, at *5 (N.J. Super. Ct. App. Div. Apr. 12, 2007) ("Of course, the promissory estoppel issue is essentially moot since the jury found breach of contract . . .").

## C.    Equitable Estoppel

Gary Chen claims that Inteplast should be equitably estopped from asserting a claim for breach of the 2008 PGA because "Inteplast made the false representations that it would purchase at least 600 metric tons per month and that Gary Chen's guarantee would be voided," and that he relied on these representations "by contributing $300,000 [in 2007] towards APV's expansion and by executing the

---

[128]    Gary Chen does not identify any alternative promise he seeks to enforce through his promissory estoppel defense aside from the putative "promise" reflected in the Nullity Provision.

[PGA] guarantee [in 2008]."[129]   "To establish a claim of equitable estoppel, the claiming party must show that the alleged conduct was done, or representation was made, intentionally or under such circumstances that it was both natural and probable that it would induce action.  Further, the conduct must be relied on, and the relying party must act so as to change his or her position to his or her detriment."  *Lopez v. Patel*, 969 A.2d 510, 518 (N.J. Super. Ct. App. Div. 2009) (citing *Miller v. Miller*, 478 A.2d 351, 355 (N.J. 1984)).  Gary Chen bears the burden of proving each element of his affirmative defenses, including his equitable estoppel defense.  *See Cavanaugh v. Skil Corp.*, 751 A.2d 564, 581 (N.J. Super. Ct. App. Div. 1999) (citing *Roberts v. Rich Foods, Inc.*, 654 A.2d 1365, 1372 (N.J. 1995)).

The chronology of events is far from clear in the summary judgment record, and the Court concludes summary judgment is not warranted here.  For instance, there are genuine issues of fact about when and what was said by representatives of each party, the parties' motivations in making those representations, and what financial contributions actually were made and when.  Thus, the Court denies Inteplast's motion for summary judgment on Gary Chen's equitable estoppel defense.

### D.   Unclean Hands

The doctrine of unclean hands provides that "a suitor in equity must come into

---

[129]   *Id.*, at 16-17.

court with clean hands and he must keep them clean after his entry and throughout the proceedings." *Borough of Princeton v. Bd. of Chosen Freeholders of Cnty. of Mercer*, 777 A.2d 19, 32 (N.J. 2001). The doctrine is equitable in nature, and "merely gives expression to the equitable principle that a court should not grant relief to one who is a wrongdoer with respect to the subject matter in suit." *Id.*

With respect to the PGA, Gary Chen argues that Inteplast has unclean hands because it has refused to accept a security interest that APV desires to give it in order to satisfy Inteplast's loans.[130] These facts, which are undisputed, are insufficient as a matter of law to establish Inteplast's unclean hands. Inteplast demonstrated a good faith basis for its contesting the putative pledge agreements on the grounds that none give Inteplast an enforceable or sufficient security interest in APV's property. Moreover, Gary Chen has not identified any part of the Nullity Provision or another provision in the PGA that requires Inteplast to accept Gary Chen's unilateral opinion that a particular security interest is valid to satisfy its loans. The Court thus grants Inteplast's motion for summary judgment on Gary Chen's unclean hands defense.

### E.   Offset

Offset (or "setoff") is a defense seeking "an affirmative recovery on a claim that may be independent of the transaction upon which the plaintiff's claim is based."

---

[130]   *See id.*, at 18-19.

*Beneficial Fin. Co. of Atlantic City v. Swaggerty*, 432 A.2d 512, 516 (N.J. 1981).

Gary Chen asserts, by way of setoff, that Inteplast breached its May 22, 2006

Agreement to purchase 600 metric tons of plastic bags per month from APV.[131]

The Court denies summary judgment on this defense.  While a guarantor

generally "cannot rely on an independent cause of action existing in favor of the

principal against the creditor as a defense or counterclaim," there is some authority

that she may do so under New Jersey law when "the principal is insolvent."  *Coldwell*

*Banker Real Estate, LLC v. Plummer & Assocs., Inc.*, 2009 WL 3230840, at *2

(D.N.J. Oct. 2, 2009).  First, the parties have not submitted evidence or meaningfully

argued whether APV is or was at some relevant time insolvent.  Even assuming APV

is and, at times relevant to the claims and defenses, was insolvent, there are disputed

issues of material fact whether Inteplast breached the May 22, 2006 Agreement that

Gary Chen raises as a defense.[132]  For instance, this agreement was signed between

APV and IBS, apparently a division of Inteplast.  Inteplast contends that it is not a

---

[131]     *Id.*, at 19.

[132]     The parties have not sought a decision from the Court regarding Inteplast and APV's
          cross-claims for breach of the May 22, 2006 Agreement.  Even if those claims are
          time-barred, Texas courts have held that a party may seek offset based on the same
          set of circumstances.  *See Bolin Oil Co. v. Staples*, 496 S.W.2d 167, 177 (Tex.
          App.–Fort Worth 1973, writ ref'd n.r.e.) (addressing setoff defense and stating that
          "[t]he cases hold that the statute of limitations is not applicable where the subject
          matter of the defense is strictly by way of defense and operates merely as a negation
          of plaintiff's right to recover").

party to the agreement and that the agreement cannot be enforced against it.[133]   Gary

Chen counters that the agreement can be enforced against Inteplast because IBS is a

"division" of the company and because the parties used "IBS" interchangeably with

the term Inteplast to refer to Inteplast.[134]   Furthermore, Inteplast points to one

translation of the May 22, 2006 Agreement that indicates that Inteplast's agreement

to order "at least 600 to 650 tons per month" accrues "[i]f the above conditions are

met," *i.e.*, if APV expands its production to 900 tons per month for export, 700-750

tons per month of which were to go to Inteplast.[135]   Gary Chen has provided,

however, a translation of that agreement that describes Inteplast's obligation under

the agreement as independent from APV's actions.[136]   There is thus a disputed fact

issue regarding Inteplast's obligations under the May 22, 2006 Agreement and

whether Inteplast ever became required to purchase 600 or more tons of bags per

month from APV.   Finally, Ben Tseng testified that the May 22, 2006 Agreement was

---

[133]   Inteplast's Reply [Doc. # 73], at 11-12.

[134]   Gary Chen's Sur-reply [Doc. # 78], at 8.

[135]   *See* Translation of May 22, 2006 Agreement [Exh. 1 to Doc. # 19], ¶ C.

[136]   *See* Translation of May 22, 2006 Agreement [Exh. 7-A to Doc. # 62], ¶ C ("For consideration, IBS agrees to order at least 600 to 650 tons per month . . .").

superseded by another agreement.[137]   There are, accordingly, disputed fact issues

whether that agreement was binding on Inteplast at the time of the alleged breach.

The Court therefore denies Inteplast's motion for summary judgment on Gary Chen's

offset defense.[138]

### F.    Fraud in the Inducement

Under New Jersey law, an injured party may seek rescission of a contract

induced by fraud. *Nolan*, 577 A.2d at 146.  "The elements of fraud in the inducement

are: a misrepresentation of material fact; knowledge or belief by the defendant of its

falsity; intent that the other party rely on the misrepresentation; and reasonable

reliance thereon by the other party." *Ginsberg v. Bistricer*, 2007 WL 987169, at *15

(N.J. Super. Ct. App. Div. Apr. 4, 2007) (citing *Nolan*, 577 A.2d at 146).  Gary Chen

asserts that Inteplast "promised that the guarantee would be voided once Inteplast has

a security interest in property of APV," and that Inteplast "never once took any action

---

[137]    Ben Tseng Dep. [Exh. B to Doc. # 73], at 58:1-5.

[138]    While the Court denies summary judgment on this defense, it notes that APV may
never have reached the capacity to produce even 600 tons per month, raising serious
questions as to whether Inteplast remained obligated to purchase that amount from
APV (even assuming Inteplast's obligation was independent from APV's production
obligations).  *See, e.g.*, Ben Tseng Dep. [Exh. B to Doc. # 73], at 62:18-63:25; Re-
Registration of Enterprise and Investment Project [Exh. D to Doc. # 73], at 2
(indicating APV's production would be 4800 tons per year).

to recognize its security interest in APV."[139]

The Court grants Inteplast summary judgment on this defense. Gary Chen has failed to offer any evidence and thus raise a genuine fact issue on at least one element of this defense. In particular, there is no evidence that Inteplast knew that its promise to void the PGA once it received a security interest in APV's property was false when made. The Court accordingly grants summary judgment on this defense.

## V.   <u>CONCLUSION AND ORDER</u>

The Court dismisses Inteplast's breach of contract claim on two of three agreements Inteplast seeks to enforce and dismisses its common law fraud and statutory fraud claims on four of five alleged misrepresentations by Gary Chen.

The Court leaves for trial (1) Inteplast's breach of the PGA claim; (2) Gary Chen's equitable estoppel and offset defenses to that claim; (3) Inteplast's breach of contract claim regarding the putative agreement that Gary Chen would cause APV to increase its production capacity to 900 tons per month if Inteplast loaned additional funds to APV; (4) Inteplast's fraud claim regarding Gary Chen's alleged misrepresentation that he would cause APV's production to increase to 900 tons per month if Inteplast loaned additional funds to APV; and (5) Gary Chen's affirmative defenses to the remaining breach of contract and fraud claims. Also remaining for

---

[139]    Gary Chen's Response [Doc. # 62], at 20.

trial are Gary Chen's declaratory judgment claim against Inteplast, APV's claims against Inteplast, Inteplast's claims against APV, and any defenses any party asserts as to these latter claims.[140]   Finally, the Court leaves for trial decisions on various choice of law questions, including determinations of various points of applicable Vietnamese law, as necessary to decide the claims remaining in this case.

For the reasons stated, it is hereby

**ORDERED** that Inteplast's Motion for Judicial Notice of Foreign Law [Doc. # 33] is **DENIED**. It is further

**ORDERED** that Plaintiffs Chih Shen Chen and Alpha Plastics (Vietnam) Co. Ltd's Motion for Judicial Notice of Foreign Law [Doc. # 56] is **DENIED**.  It is further

**ORDERED**  that Defendant Inteplast Group, Ltd.'s Motion for Partial Summary Judgment on Claims Against Chih Shen Chen [Doc. # 52] is **GRANTED in part** and **DENIED in part**.  It is further

**ORDERED** that Plaintiff Chih Shen Chen's Motion for Partial Summary

---

[140]   The Court notes that many of the issues raised by these other pending claims have been addressed in this Memorandum and Order.  The parties are advised to analyze those claims and defenses in light of this Memorandum and Order and be prepared to discuss with the Court how they wish to proceed as to those assertions.  The Court also notes that the parties should be prepared to address whether Inteplast's statutory fraud cause of action is moot in light of the Court's rulings in this Memorandum and Order.

Judgment on Inteplast's Claims of Fraud and Statutory Fraud [Doc. # 55] is **GRANTED in part** and **DENIED in part**.  It is further

ORDERED that a conference in this case is set for **April 8, 2014, at 2:00 p.m.** Counsel should come to the conference prepared to provide the Court with the names of proposed agreed mediators (approved by their clients) for a second mediation of this case.  It is further

ORDERED that the parties' Joint Pretrial Order is due by **May 14, 2014**, and docket call in this case is rescheduled for **May 21, 2014, at 2:30 p.m.**

SIGNED at Houston, Texas, this  31st  day of **March, 2014**.

Nancy F. Atlas
United States District Judge